The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

NINTENDO OF AMERICA INC.,

            Plaintiff,

    v.

DOES 1-20, d/b/a, ANXCHIP.COM,
AXIOGAME.COM, FLASHCARDA.COM,
MOD3DSCARDS.COM, NX-CARD.COM,
SXFLASHCARD.COM, TXSWITCH.COM,
and USACHIPSS.COM,

            Defendants.

NO.  2:20-cv-00738-TSZ

PLAINTIFF'S MOTION FOR
LEAVE TO SERVE PROCESS
BY ALTERNATIVE MEANS

Note on Motion Calendar:
June 26, 2020

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS
BY ALTERNATIVE MEANS
No. 2:20-cv-00738

**GORDON
TILDEN
THOMAS
CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

Nintendo of America Inc. ("Plaintiff") respectfully requests that the Court authorize Plaintiff to serve Defendants Does 1−20 ("Defendants")—whose identities and current physical addresses are unknown—through alternative means under Federal Rule of Civil Procedure ("Rule") 4(f)(3).  As set forth herein, because Defendants have gone to great lengths to obscure their identities and evade detection, Nintendo has been unable to identify a reliable physical address for any of the Defendants, notwithstanding Nintendo's tremendous efforts.  Nintendo thus seeks leave to effect service of process on Defendants by electronic mail ("email"), using all known email addresses and electronic modes of communication associated with Defendants.[1]  Defendants communicate exclusively online and have directed the public to contact them through these email addresses.  Moreover, this lawsuit has been widely covered in the media and Defendants have already taken multiple actions demonstrating that they are aware of this lawsuit, including switching URL names (or "domain-hopping") in order to evade detection and service.  In short, Defendants have unilaterally made themselves immune from service of process by anything other than electronic means.  Courts have made it abundantly clear that alternative service by email is appropriate and often preferable in these precise circumstances.  Indeed, if Plaintiff is not able to serve Defendants by email, Defendants will be able operate with impunity—fully aware of the lawsuit against them—simply because they have been able to physically hide.

## INTRODUCTION

Plaintiff Nintendo of America Inc., a wholly-owned subsidiary of Nintendo Co., Ltd., (collectively, "Nintendo"), is a consumer electronics and video game company famous throughout the United States and the world.  Nintendo goes to great lengths to protect its substantial creative and financial investment in its video games and video game consoles.

---

[1] Upon filing this Motion to Serve Process by Alternative Means ("Motion"), Plaintiff will email Defendants this Motion and accompanying papers, a copy of the Summons and Complaint, and the Court's Order of May 22, 2020 (Dkt. 11).

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS BY ALTERNATIVE MEANS - 1
No. 2:20-cv-00738

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

Defendants Does 1–20 operate websites (the "Websites")[2] through which they offer devices to the public, the sole purpose of which is to hack the Nintendo Switch and the Nintendo Switch Lite video game consoles[3] in order to allow people to play pirated video games. Specifically, the Websites sell products developed by an anonymous group of hackers called "Team Xecuter." Team Xecuter unlawfully designs and manufactures an unauthorized operating system called the "SX OS," and accompanying piracy tools that install the SX OS (the "Circumvention Devices") onto the Nintendo Switch consoles. The Circumvention Devices—offered, distributed, and trafficked by Defendants—strip away or circumvent technological protection measures (the "Technological Measures") that Nintendo put into place to protect its invaluable copyrighted software and video games from unauthorized access and copying, and thus allow the Nintendo Switch to be used for massive intellectual property theft and infringement. Such trafficking in the Circumvention Devices is in direct violation of the Anti-Trafficking provisions of the Digital Millennium Copyright Act. *See* 17 U.S.C. § 1201. Further, many of the Defendants also sell memory cards full of pirated games; their creation and distribution of those cards violate Nintendo's exclusive rights to reproduce and distribute its copyrighted works under 17 U.S.C. § 106(1), (3).

On May 15, 2020, Plaintiff brought this action to stop Defendants' intentional and widespread trafficking in the Circumvention Devices and copyright infringement. Dkt. 1 ("Compl."). Plaintiff must now serve a copy of the Summons and Complaint on Defendants. Plaintiff's investigation—both for months prior to filing the Complaint and since the filing of the Complaint—has been unable to determine any of the Defendants' real identities or physical addresses, because Defendants operate exclusively online and have gone to great efforts to evade

---

[2] Since the Complaint has been filed, five of the Defendants have already moved URLs (known as "domain-hopping") to evade detection and enforcement, and those Defendants are now operating at different URLs. *See infra* at 8, 15. Reference to Defendants or the domain names/URLs in the caption above should be read to encompass both the original URLs and any and all new URLs.

[3] References to the Nintendo Switch herein include both the Nintendo Switch and the Nintendo Switch Lite, unless a distinction is drawn in the text.

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS BY ALTERNATIVE MEANS - 2
No. 2:20-cv-00738

**GORDON TILDEN THOMAS CORDELL**
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

detection, including by using privacy tools to mask their domain registration information and otherwise failing to provide physical addresses for themselves on their Websites.  Indeed, Defendants' services operate exclusively on the Internet with no disclosed physical presence. For these reasons, it is currently impossible for Plaintiff to effect service of process through traditional means.

As discussed below, because Defendants conduct business over the Internet, each of them maintains multiple known email addresses through which they regularly interact with their customers (including by taking orders, providing customer service, processing payments, providing licensing keys, and offering users the ability to review and comment on products). Defendants affirmatively encourage electronic communication by directing customers to contact them through email and by not providing any other contact information.  In fact, Defendants have already used email to communicate with Nintendo's investigators.  Defendants may also be reached through their registrars and online privacy services, which provide email addresses to contact Defendants.  Finally, as discussed in more detail *infra* at 14–16, Defendants have already demonstrated that they have received notice of this lawsuit, including by domain-hopping in an attempt to evade detection following the lawsuit, and by writing their customers about the lawsuit.

Under these circumstances, courts have found that service by email is not just permissible but appropriate.  *See e.g.*, *Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co.*, No. 2:18-CV-01032-TSZ, 2019 WL 1572675, at *6 (W.D. Wash. Apr. 11, 2019) (allowing service by email where the defendants "d[id] not merely operate on the internet, but have 'structured their businesses such that they could be contacted only via their email addresses.'" (citation and internal alterations omitted)).  In fact, multiple courts have found that service by email is *more* likely than traditional service to apprise Defendants such as these of litigation, and that it more than satisfies the requirements of Rule 4(f)(3) and due process.  *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (noting that, under some

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS
BY ALTERNATIVE MEANS - 3
No. 2:20-cv-00738

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

circumstances, electronic service can be the means most likely to notify defendants of claims against them).

## FACTUAL BACKGROUND

### I.   Nintendo and Its Copyrighted Works.

Nintendo is a company and brand famous throughout the United States and the world, known by consumers of all ages for its fun and innovative video games, video game consoles, and its beloved video game characters.  Complaint, Dkt. 1, ¶ 41.  The popularity of Nintendo's video games and video game consoles has made Nintendo the target of intellectual property pirates, who benefit from Nintendo's innovation and investment by making unauthorized copies of Nintendo video games, or by creating or selling circumvention devices so that others can play pirated copies of Nintendo video games on a Nintendo console.  Compl. ¶ 46.

Nintendo has taken many steps and expended enormous resources to halt the illegal copying, marketing, sale, and distribution of Nintendo video games, including the implementation of technological protection measures in Nintendo Switch consoles that prevent unauthorized access to, and copying of, Nintendo's copyrighted works (the "Technological Measures").  Compl. ¶¶ 47–48.  These measures also prevent unauthorized play of pirated games on Nintendo's video game consoles.  *Id.*  In addition to the Technological Measures related to the consoles and the operating system, the Nintendo Switch consoles also contain additional Technological Measures that verify each game played on the Nintendo Switch (the "Game TPMs").  Compl. ¶ 55.

### II.   Defendants' Widespread Distribution of Circumvention Devices.

#### A.   <u>Circumvention Devices and the SX OS</u>.

On or about May 16, 2018, Team Xecuter publicly announced its creation of the SX OS, an unauthorized operating system that can be installed only on the Nintendo Switch.  Compl. ¶ 59.  To run the SX OS on the Nintendo Switch, Team Xecuter offers Circumvention Devices that directly circumvent Nintendo's Technological Measures, which control access to the console and

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS BY ALTERNATIVE MEANS - 4
No. 2:20-cv-00738

**GORDON TILDEN THOMAS CORDELL**  600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

to Nintendo's copyrighted works, as well as prevent copying of those works.  *Id.*  Once running, the SX OS continues to circumvent Game TPMs, thereby allowing users to play, copy, and share pirated games, and otherwise operate and manipulate the console without detection, harming Nintendo's business and revenues from its copyrighted works.  *Id.*  Defendants traffic in these Circumvention Devices in the United States and in this District.  Compl. ¶¶ 26, 35.

*First,* Defendants offer for sale Team Xecuter's SX Pro Circumvention Device, a small piece of hardware (or "dongle") that can be inserted into the USB port of the Nintendo Switch.  Compl. ¶ 60.  Once inserted, the Nintendo Switch's Technological Measures are overridden and circumvented, and the Nintendo Switch is booted (*i.e.*, started up), and can run the unauthorized operating system SX OS from an inserted memory card (containing the latest version of SX OS).  *Id. Second,* Defendants offer to the public Team Xecuter's recently-announced Circumvention Devices, the SX Core and SX Lite.  Compl. ¶ 64.  Images on Team Xecuter's website show that the device is a hardware chip—or "modchip"—which is installed inside the Nintendo Switch after essentially breaking open the casing.  *Id.*  Defendants are taking preorders and processing payments for the two forthcoming Circumvention Devices, the SX Core and SX Lite.  Compl. ¶ 70.  The SX Pro, SX Core, and SX Lite circumvent Nintendo's Technological Measures, because otherwise, the unauthorized SX OS could not be run on the consoles.  Compl. ¶ 69.

B.     <u>Defendants' Encouragement and Facilitation of Rampant Piracy</u>.

In addition to the circumvention of Technological Measures, the SX OS—installable with the Circumvention Devices—also circumvents certain Game TPMs, allowing hackers to make, copy, play, and further distribute unauthorized copies of Nintendo and its licensees' copyrighted video games, all without detection by Nintendo.  Compl. ¶ 71.  Using the SX OS, users can find an illegal game file online and transfer it to the Nintendo Switch.  The SX OS allows these illegal game copies to run locally, even though Nintendo's official operating system would not allow a user to run such illegal and unauthorized copies.  Nintendo has not authorized users to download or play *any* games on the Nintendo Switch other than those purchased lawfully from

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS
BY ALTERNATIVE MEANS - 5
No. 2:20-cv-00738

**GORDON
TILDEN
THOMAS
CORDELL**
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

Nintendo. Compl. ¶ 74. The sale and distribution of such pirated games causes direct harm to, and financial loss for, Nintendo. Compl. ¶ 75.

      C.      <u>Defendants' Infringement of Nintendo's Copyrighted Works by Direct Sale</u>.

Five of Defendants' Websites—ANXCHIP.COM, FLASHCARDA.COM, MOD3DSCARDS.COM, NX-CARD.COM, and USACHIPSS.COM (now all at new domain names)—also sell memory cards preloaded with pirated, and thus infringing, copyrighted games for the Nintendo Switch. Compl. ¶ 78. As set forth in Appendix A to the Complaint, Defendants infringe at least 14 works in which Nintendo owns or exclusively controls the copyrights. Compl. ¶ 83; Compl. Appendix A.

      D.      <u>Defendants' Purposeful Evasion of Detection</u>.

Defendants have gone to great lengths to conceal their identity, escape detection, and attempt to evade the jurisdiction and enforcement powers of the courts.

*First*, each Defendant either does not provide any physical address or provides an address that is incomplete or fake. Declaration of Jacqueline N. McMahon ("McMahon Decl.") ¶ 7. For example, AXIOGAME.COM does not list any address on its website, and both FLASHCARDA.COM and SXFLASHCARD.COM list only a zip code and city, without any street address. McMahon Decl. ¶¶ 11–13. ANXCHIP once had an address on the site, but it was removed after Nintendo took action against the site via the UDRP proceeding discussed below. Declaration of Jacqueline "Lynn" Knudson ("Knudson Decl.") ¶ 24; *see infra* at 8–9. While AGRESU.COM (f/k/a NX-CARD.COM) and NERGED.COM (f/k/a USACHIPSS.COM) list U.S. addresses, supplemental investigation and service attempts have confirmed that those addresses are not associated with or connected to the Defendants or their Websites, they are not places where Defendants may be served, and that it is reasonable to conclude that Defendants are operating from abroad.[4] McMahon Decl. ¶ 14; Knudson Decl. ¶¶ 25–26. All Defendant

---

[4] Specifically, Nintendo directed an outside investigator to conduct a supplemental investigation into those addresses, which found no connection between the addresses and the Defendants or their Websites. Knudson Decl. ¶ 25; McMahon Decl. ¶ 15. In addition, and out of an abundance of caution, Nintendo attempted service on those

Websites have at some point provided non-U.S. addresses on shipping labels, but they either do not resolve to real world locations, or are associated with third-party fulfillment centers unrelated to the Defendants. Knudson Decl. ¶ 9. Further, where Nintendo has received multiple shipments from the same Defendant website, the packages have had different addresses on the return labels. Knudson Decl. ¶ 11.

*Second*, none of the Websites provide any identifying information about the individuals behind the Websites. McMahon Decl. ¶ 6. Along those lines, Defendants do not identify any real persons as registrants of the Websites on the WHOIS database—a database maintained by the Internet Corporation for Assigned Names and Numbers ("ICANN") that is supposed to list registrants of domain names.[5]   Knudson Decl. ¶¶ 4–7.

*Third*, as set forth in the Knudson Declaration, Defendants use a range of aliases to operate online, avoid divulging their real names, and have utilized a variety of companies, in part to help them to evade detection. Knudson Decl. ¶¶ 7–8.

*Fourth,* since the filing of the suit, Defendants have continued to engage in tactics to evade detection and enforcement. In the several days following the filing of this suit, three of the Defendants—ANXCHIP.COM, FLASHCARD.COM, and USACHIPSS.COM—wrote their customers that they intend to "domain-hop," noting that "***because of Nintendo lawsuit***, our site will be changed to another domain . . . ." Knudson Decl. ¶ 18 (emphasis added). MOD3DSCARDS.COM and NX-CARD.COM similarly stated to customers that "[d]ue to the lawsuit of Nintendo" they will close their site and "open a new site." *Id.*  All of these websites have already domain-hopped and reappeared at different URLs: LOWBR.COM,

---

addresses which further confirmed that they are not associated with the Defendants. Knudson Decl. ¶ 25. This makes sense as both Defendants have in the past shipped products from abroad, and both processed recent preorder transactions in foreign currencies, further demonstrating that their domestic addresses are illegitimate and that they are operating from abroad. Knudson Decl. ¶¶ 9, 17, 26.

[5] *WHOIS Data Reminder Policy*, available at https://whois.icann.org/en/whois-data-reminder-policy-wdrp; *see also, e.g.*, *Registrant Benefits and Responsibilities*, available at https://whois.icann.org/en/2013-raa-registrant-benefits-and-responsibilities.

MATERPL.COM, NERGED.COM, BRUJOON.COM, and AGRESU.COM, respectively. Knudson Decl. ¶ 16. Investigators have already completed test purchases for two of the new domains in just the short amount of time since the filing of the Complaint, which arrived from abroad and were processed in foreign currencies. Knudson Decl. ¶ 17. Yet another, AXIOGAME.COM, remains online but has removed its product pages for Team Xecuter's products. Knudson Decl. ¶ 19.

Notwithstanding all of the above obstacles, Nintendo has exerted significant efforts to discover Defendants' identities and locations. Indeed, for at least eight months, Nintendo has conducted a multi-pronged, international investigation in an attempt to identify Defendants and their places of residence, employing methods such as test purchasing and participating in online chat rooms, and utilizing various enforcement tools, all to no avail. McMahon Decl. ¶¶ 4–5. As an example of an attempt by Nintendo at such an enforcement tool, one of the Defendants previously operated a reseller website at 3DS-FLASHCARD.COM. Knudson Decl. ¶ 24. Because "3DS" is a registered trademark of Nintendo and the name of another Nintendo console, Nintendo filed a complaint with the World Intellectual Property Organization (WIPO) under the Uniform Domain Name Dispute Resolution Policy (UDRP). *Id.* Nintendo was successful in getting the domain name transferred to itself, but Defendants shortly thereafter reappeared at 3DS-FLASHCARD.CC. *Id.* Nintendo again filed a UDRP complaint and was again successful in getting the domain name transferred. *Id.* However, Defendants again simply reappeared at a different domain name; this time, ANXCHIP.COM, which is one of the websites in this suit. *Id.* Nintendo filed a similar UDRP complaint against MOD3DSCARD.COM and was successful, but the Defendants reappeared at MOD3DSCARDS.COM (with an 'S'), one of the Websites at issue here. *Id.*

In sum, Nintendo has been unable to identify any legitimate physical addresses for Defendants, and Defendants continue to operate in the shadows, domain hopping and providing no physical address on their Websites.

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS
BY ALTERNATIVE MEANS - 8
No. 2:20-cv-00738

**GORDON TILDEN THOMAS CORDELL**
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

### III. Plaintiffs Will Transmit the Summons and Complaint By Alternative Means To Multiple Known Email Addresses and Contact Information.

Service by email will ensure that Defendants receive notice of the Complaint consistent with requirements of due process. Plaintiff will effect service by sending the Summons and Complaint to the emails addresses identified in Paragraph 27 of the Knudson Declaration. These email addresses have been identified as being used by Defendants because they have appeared on the Defendants' Websites, were used by Defendants in communications with Nintendo's investigators, including shipping confirmations, and appeared in the Websites' WHOIS data. Knudson Decl. ¶ 27. These email addresses constitute the methods of communication that Defendants provide to the public as means of contacting them, and thus will effect notice of the lawsuit. Moreover, as set forth below, Defendants have taken actions subsequent to the filing of the Complaint that demonstrate they are already aware of the lawsuit and are attempting to continue to evade detection.

## ARGUMENT

Under Rule 4(f)(3), a plaintiff may serve foreign defendants by any method permitted by the court, so long as the method is not prohibited by international agreement and comports with due process. *See* Fed. R. Civ. P. 4(f)(3); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313–15 (1950). Courts, including in this District, have routinely authorized service by email under Rule 4(f)(3). *See, e.g.*, *Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co.*, No. 2:18-CV-01032-TSZ, 2019 WL 1572675, at *6 (W.D. Wash. Apr. 11, 2019); *Sun v. Kao*, 170 F. Supp. 3d 1321, 1327 (W.D. Wash. 2016), *aff'd sub nom. Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018); *Chanel, Inc. v. acheterchanel.com*, No. 12-CV-21854, 2012 WL 3544844, at *2 (S.D. Fla. Aug. 16, 2012) (recognizing that there exists "a catalogue of cases where courts have granted leave for a plaintiff to serve by e-mail" (citation omitted)). It is Nintendo's understanding that the Doe Defendants reside outside of the United States, and thus that alternative service under Rule 4(k)(3) is appropriate. Knudson Decl. ¶ 26.

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS BY ALTERNATIVE MEANS - 9
No. 2:20-cv-00738

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Service by email is particularly appropriate here because Defendants employ privacy services, their trafficking operation takes place entirely online, they confine their communications to electronic means, and they direct their customers and users to use the same contact methods that Nintendo proposes to use here.

## I. The Federal Rules Of Civil Procedure Authorize Alternative Service and Specifically Authorize This Court To Order Service By Email.

Under Rule 4(f)(3), plaintiffs may serve foreign defendants "by other means not prohibited by international agreement, as the court orders," so long as the alternative means of service comport with the requirements of due process. Fed. R. Civ. P. 4(f)(3); *see also, e.g.*, *Mullane*, 339 U.S. at 313–15; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014, 1016 (9th Cir. 2002). An alternative means of service comports with due process if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *see also Rio Props.*, 284 F.3d at 1016−17 (same).

Courts recognize that "[s]ervice of process under Rule 4(f)(3) 'is neither a "last resort" nor "extraordinary relief,"' but rather 'one means among several which enables service of process on an international defendant.'" *United States v. Pomerantz*, No. 16-0689JLR, 2017 WL 1037552, at *2 n.1 (W.D. Wash. Mar. 17, 2017) (quoting *Rio Props*, 284 F.3d at 1014−15). Importantly, courts have held that there is no preference in the rules between service under Rule 4(f)(1) or 4(f)(2), and alternative service under Rule 4(f)(3). Indeed, "Rule 4(f) does not create a hierarchy of preferred methods of service of process and, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or 4(f)(2)." *Craigslist, Inc. v. Meyer*, No. C 09-4739 SI, 2010 WL 2975938, at *1 (N.D. Cal. July 26, 2010) (citation and internal quotation marks omitted); *see also Rio Props.*, 284 F.3d at 1014−15 (there is "no support" for the argument that Rule 4(f) "create[s] a hierarchy of preferred methods of service of process").

Courts have routinely authorized service by email as alternative service under Rule 4(f)(3) in the precise circumstances that exist here: where the unlawful conduct occurs online, where defendants employ privacy services, conceal their physical location, and conceal their true identities, and where defendants direct their customers and users to use the same contact methods Nintendo proposes to use here. *See, e.g.*, *Rubie's Costume Co. v. Yiwu Hua Hao Toys Co.*, No. 2:18-cv-01530-RAJ, 2019 WL 6310564, at *3 (W.D. Wash. Nov. 25, 2019) (granting alternative service to a defendant in China by email and Amazon.com storefront where "Plaintiff has been unable to ascertain physical addresses for service after a reasonable effort or where there is evidence defendants are attempting to evade service"); *Philips*, 2019 WL 1572675, *6 (finding service by email appropriate where the defendants "d[id] not merely operate on the internet, but have 'structured their businesses such that they could be contacted only via their email addresses'" (citation and internal alterations omitted)); *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018) (granting alternative service where "defendants engage in online business and regularly communicate with customers through functional email addresses"); *Chanel*, 2012 WL 3544844, at *2 (recognizing that there exists "a catalogue of cases where courts have granted leave for a plaintiff to serve by e-mail where . . . 'defendants conduct business extensively, if not exclusively, through their [i]nternet websites and correspond regularly with customers via email'" (citation omitted)); *In re Int'l Telemedia Assocs., Inc.*, 245 B.R. 713, 722 (Bankr. N.D. Ga. 2000) (authorizing electronic service because "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules" and because "Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party").

Here, service by email is warranted because Defendants operate entirely online and confine their communications to electronic means. Defendants have employed privacy services and otherwise concealed their identity. The Websites do not contain any accurate physical location information or identifying information for Defendants. *See supra* at 6–7. Moreover,

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS BY ALTERNATIVE MEANS - 11
No. 2:20-cv-00738

**GORDON TILDEN THOMAS CORDELL**  600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Defendants have already been evasive in response to Nintendo's efforts to enforce its rights, at times domain hopping, including in reaction to this lawsuit. *See infra* at 14–16. In short, the law is clear that alternative service by email is permitted, and warranted, here.

## II.  The Alternative Means Proposed Are Not Prohibited By International Agreement.

Under Rule 4(f)(3), this Court may authorize service of process on an individual in a foreign country by any means—including email—so long as such service is not prohibited by international agreement. Fed. R. Civ. P. 4(f)(3). *See, e.g.*, *Pomerantz*, 2017 WL 1037552, at *3 (finding that, other than the requirements that service be directed by the court and not prohibited by international agreement, "Rule 4(f)(3) does not impose any other limitations").

Article 10 of the Hague Convention provides for service by mail of judicial documents in foreign countries. However, the Hague Convention "shall not apply where the address of the person to be served with the document is not known." HAGUE CONVENTION, 20 U.S.T. 361, art. 1 (1969). Moreover, courts are clear that, where it is not possible to determine the physical location of a defendant—even where it is known they reside in a country signed onto the Hague Convention—service by email is appropriate. *See e.g.*, *Philips*, 2019 WL 1572675, *2 (finding service by email appropriate against Chinese defendants where the defendants "d[id] not list addresses on their websites and/or marketplace listings" and where, "[t]o the extent addresses are listed, those addresses appear to be inaccurate, inconsistent, or incomplete"); *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-CV-05149 YGR, 2012 WL 3580670, at *2 (N.D. Cal. Aug. 17, 2012) (holding that, where there was no reliable address for Defendants, permitting alternative service by email was appropriate because it was "the method most likely to apprise [the defendants] of this action"); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572 JSW, 2007 WL 1140639, at *1−2 (N.D. Cal. Apr. 17, 2007) (granting alternative service by email where plaintiff made a showing that the physical addresses it had obtained were incorrect); *St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240-LB, 2016 WL 5725002, at *1–2

(N.D. Cal. Sept. 30, 2016) (approving of alternative service through Twitter where efforts to locate a physical address for the defendant had been unsuccessful). And courts within other circuits have recognized the same. *See, e.g.*, *Elsevier*, 287 F. Supp. 3d at 379 (finding that, because there were no available physical addresses for the Defendants, it would have been "inappropriate to require that the plaintiffs attempt service through the Hague Convention.").

Here, as set forth above, because Defendants have gone to extensive lengths to obscure their true identities, Nintendo has been unable to uncover a reliable physical address for any of the Defendants. *See supra* at 6–7. Thus, the Hague Convention does not apply, and service by email is not prohibited by international agreement.

### III. The Means Of Service Carried Out By Plaintiff Are Reasonably Calculated To Apprise Defendants Of The Pending Action.

Serving Defendants by email comports with due process because it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Numerous courts—including the Ninth Circuit and this District—have recognized that service of process by email is a reasonable means of giving defendants notice, and in many cases is the *most* likely means through which notice will be effected, particularly where Defendants operate a purely online business. "If any method of communication is reasonably calculated to provide [defendants] with notice, surely it is email." *Rio Props.*, 284 F.3d at 1018 (allowing service by email where defendant "designated its email address as its preferred contact information"); *Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x 476, 480 (9th Cir. 2017) (finding service by email reasonably calculated to provide notice); *Philips*, 2019 WL 1572675, Dkt. 21, at 1–2 (finding service by email and by sending a link to the Summons and Complaint to the Defendant's online storefront was "reasonably calculated to result in notice to the Defendants"); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (service by email comported with due process); *Fisher v. Petr Konchalovsky*

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS BY ALTERNATIVE MEANS - 13
No. 2:20-cv-00738

**GORDON TILDEN THOMAS CORDELL**
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Found.*, No. 15-cv-9831(AJN), 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10, 2016) ("[A]s long as the plaintiff 'demonstrates that the email is likely to reach the defendant,' then '[s]ervice by email alone comports with due process.'" (citation omitted)).

The methods of service that Plaintiff propose here—service by email to numerous email addresses, many of which Defendants have already used to communicate with Nintendo's investigators—are certain to apprise Defendants of this action. *See Rio Props.*, 284 F.3d at 1017–18 (allowing service by email where defendant "designated its email address as its preferred contact information."); *Philips*, 2019 WL 1572675, Dkt. 21, at 1–2 (approving alternative service of Defendants by email and through sending a link to the Summons and Complaint on a "Contact Supplier" page of Defendants' online storefront).

As such, Plaintiff's proposed method of alternative service fully comports with the requirements of Rule 4(f)(3) and of due process, and is in fact "the method of service most likely to reach" Defendants. *Rio Props.*, 284 F.3d at 1017.

**IV.     Defendants Have Likely Already Received Actual Notice Of This Action.**

While alternative service can be granted so long as a court is confident that service by email is likely to apprise the Defendants about a lawsuit *once effectuated*, here, it is confirmed that the majority of Defendants already know about the lawsuit, and highly likely that the remainder of the Defendants do as well.

Defendants have taken actions after this lawsuit was filed that show they have received actual notice of the action. As noted above, just days after the filing, five Defendant websites—ANXCHIP.COM, FLASHCARDA.COM, MOD3DSCARDS.COM, NX-CARD.COM, and USACHIPSS.COM—went offline. ANXCHIP.COM, FLASHCARDA.COM, and USACHIPSS.COM all sent identical emails to their customers—including Nintendo's investigators who purchased preorders of the SX Core and SX Lite—stating explicitly that "because of the Nintendo lawsuit, our site will be changed to another domain, but your orders will be shipped out as usual . . . ." Knudson Decl. ¶ 18. Other Websites posted to chatrooms

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS BY ALTERNATIVE MEANS - 14
No. 2:20-cv-00738

**GORDON TILDEN THOMAS CORDELL**
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

stating they were closing their sites "[d]ue to the lawsuit of Nintendo" but "will open a new site" in "around 24 hours." *Id.* All five of the Websites that went offline have already reappeared at different domain names: ANXCHIP.COM has become LOWBR.COM, FLASHCARDA.COM has become MATERPL.COM, MOD3DSCARDS.COM has become BRUJOON.COM, and NX-CARD.COM has become AGRESU.COM. Knudson Decl. ¶ 16. Finally, AXIOGAME.COM remains online, but has removed its Team Xecuter products. Knudson Decl. ¶ 19. These acts clearly show that these Defendants are aware of the instant suit.

Moreover, since the filing of the Complaint on May 15, 2020, this lawsuit has been widely publicized in the media, in more than 50 publications, including generally widely read publications such as Polygon, Ars Technica, TechRadar, Reddit, and Bloomberg Law, and publications widely read in the gaming and hacking communities, such as Nintendo Life, Nintendo Enthusiast, Game Revolution, and GBATEMP. For instance, GBATEMP, a popular hacking news website, published an article on both litigations, accurately quoting from Nintendo's Complaint and accurately stating the remedies Nintendo is seeking. Knudson Decl. ¶ 13. That article alone has over 26,000 views and over 300 comments. *Id.*

In addition to external news coverage, there has been a significant amount of online discussion within the communities that Defendants operate, including Team Xecuter's official chat room, available at XECUTER.ROCKS. Knudson Decl. ¶ 21. Various customers are going into Team Xecuter's chatroom to discuss the lawsuit and inquire into where they can buy products in light of the fact that certain Websites have been sued. Individuals have posted screenshots of the filing of the complaint, and noted that "[m]ost big vendors were listed in the law suit." *Id.*

In short, given the extensive coverage of the lawsuit (in the media and in chatrooms), the fact that all but three of the Defendant websites have come offline since the filing of this suit and have reappeared at new domains, and the fact that some Defendants have communicated with their customers about this lawsuit, it is certain that the majority of Defendants have already

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS
BY ALTERNATIVE MEANS - 15
No. 2:20-cv-00738

**GORDON TILDEN THOMAS CORDELL**
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

received notice of the lawsuit, and highly likely that all have. *Cf. JBR, Inc. v. Cafe Don Paco, Inc.*, No. 12-CV-02377 NC, 2013 WL 1891386, at *6 (N.D. Cal. May 6, 2013) ("Courts may overlook . . . a noncompliant service of process provided that [] the party to be served received actual notice . . . .").

## CONCLUSION

In sum, because the Federal Rules authorize alternative service, and because alternative service is necessary and appropriate here—where Defendants operate exclusively online, have encouraged communication by email, have provided no other means of communication, and have demonstrated knowledge of the suit already—Nintendo respectfully requests leave to effect service on Defendants by email at all of the email addresses associated with the Websites.

PLAINTIFF'S MOTION FOR LEAVE TO SERVE PROCESS BY ALTERNATIVE MEANS - 16
No. 2:20-cv-00738

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

DATED this 8th day of June, 2020.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| GORDON TILDEN THOMAS & CORDELL LLP | JENNER & BLOCK LLP |
| /s/ Michael P. Brown | /s/ Alison I. Stein |
| Michael Brown, WSBA #45618 | Alison I. Stein (*Pro Hac Vice*) |
| Michael Rosenberger, WSBA 1730 | Cayman C. Mitchell (*Pro Hac Vice*)* |
| One Union Square | 919 Third Avenue, 38th Floor |
| 600 University Street, Suite 2915 | New York, NY  10022 |
| Seattle, WA 98101 | Telephone:  212.891.1600 |
| Telephone:  (206) 467-6477 | astein@jenner.com |
| mrosenberger@gordontilden.com | cmitchell@jenner.com |
| mbrown@gordontilden.com | |
| | Christopher S. Lindsay (*Pro Hac Vice*) |
| | 633 West 5th Street, Suite 3600 |
| | Los Angeles, CA  90071 |
| | Telephone:  213.239.5100 |
| | clindsay@jenner.com |
| | *Attorneys for Plaintiff Nintendo of America Inc.* |

*Admitted only in Massachusetts, not admitted in New York.  Practicing under the supervision of the partnership of Jenner & Block, LLP