The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| NINTENDO OF AMERICA INC., | No. 2:20-cv-00738-TSZ |
| Plaintiff, | |
| v. | PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND ENTRY OF A PERMANENT INJUNCTION |
| DOES 1-20, d/b/a, ANXCHIP.COM, AXIOGAME.COM, FLASHCARDA.COM, MOD3DSCARDS.COM, NX-CARD.COM, SXFLASHCARD.COM, TXSWITCH.COM, and USACHIPSS.COM, | NOTE ON MOTION CALENDAR: September 4, 2020 |
| Defendants. | |

## I. Introduction.

This Court entered default against all Defendants on August 19, 2020. Clerk's Order of Default, Dkt. 24. Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55(b), Plaintiff Nintendo of America Inc. ("Nintendo") now moves this Court to enter default judgment against Defendants Does 1–20, d/b/a ANXCHIP.COM, AXIOGAME.COM, FLASHCARDA.COM, MOD3DSCARDS.COM, NX-CARD.COM, SXFLASHCARD.COM, TXSWITCH.COM, and USACHIPSS.COM.[1] As explained below, Nintendo is also entitled to a permanent injunction restraining Defendants from further violations. Nintendo respectfully requests that this Court grant that relief.

## II. Pertinent Background.[2]

### A. Nintendo and Its Copyrighted Works.

Nintendo is a company and brand famous throughout the United States and the world, known by consumers of all ages for its fun and innovative video games, video game consoles—including the best-selling Nintendo Switch—and its beloved video game characters. Compl. ¶¶ 41, 43. The popularity of Nintendo's video games and video game consoles has made Nintendo the target of intellectual property pirates who benefit from Nintendo's innovation and investment by making unauthorized copies of Nintendo video games, or by creating or selling devices that circumvent technological protection measures on Nintendo consoles so that others can copy, distribute, and play pirated copies of Nintendo video games. *Id*. ¶ 46.

---

[1] Following the initiation of this suit, the operators of five of the websites changed the domain name they operated under. *See* Mot. for Leave to Serve Process By Alternate Means, Dkt. No. 15 at 2 n.2. Specifically, ANXCHIP.COM became LOWBR.COM, FLASHCARDA.COM became MATERPL.COM, MOD3DSCARDS.COM became BRUJOON.COM, and NXCARD.COM became AGRESU.COM. Declaration of Alison I. Stein ("Stein Decl."), September 4, 2020, at ¶ 4. Reference to Defendants or the domain names/URLs in the caption above should be read to encompass both the original URLs and any and all new URLs.

[2] On a motion for default judgment, the Court must accept the factual allegations in the complaint as true, except for facts related to the amount of damages, which must be proved. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); *Ferrari Fin. Servs., Inc. v. Biggs*, No. 3:19-CV-05873-RBL, 2020 WL 3971342, at *1 (W.D. Wash. July 14, 2020).

Nintendo has taken many steps and expended enormous resources to halt the illegal copying, marketing, sale, and distribution of Nintendo video games, including the implementation of technological protection measures in Nintendo Switch consoles that prevent unauthorized access to, and copying of, Nintendo's copyrighted works (the "Technological Measures"). *Id*. ¶¶ 47–48. These measures also prevent the unauthorized play of pirated games on Nintendo's video game consoles. *Id*. In addition to the Technological Measures related to the consoles and the operating system, Nintendo Switch consoles also contain additional measures that verify each game played on the Nintendo Switch (the "Game TPMs"). *Id*. ¶ 55.

### B. Defendants' Widespread Distribution of Circumvention Devices.

#### 1. Circumvention Devices and the SX OS.

On or about May 16, 2018, Team Xecuter—an anonymous collection of hackers who develop devices and methods to circumvent Nintendo's Technological Measures—publicly announced its creation of the SX OS, an unauthorized operating system that can be installed only on the Nintendo Switch. Compl. ¶¶ 3, 59. To run the SX OS on the Nintendo Switch, Team Xecuter offers devices that directly circumvent Nintendo's Technological Measures, which control access to the console and to Nintendo's copyrighted works, as well as prevent copying of those works (the "Circumvention Devices"). *Id.* ¶ 59. Once running, the SX OS continues to circumvent Game TPMs, thereby allowing users to play, copy, and share pirated games, and otherwise operate and manipulate the console without detection, harming Nintendo's business and revenues from its copyrighted works. *Id.* Defendants have trafficked in these Circumvention Devices in the United States and in this District. *Id*. ¶¶ 26, 35.

*First*, Defendants have offered for sale Team Xecuter's SX Pro Circumvention Device, a small piece of hardware (or "dongle") that can be inserted into the USB port of the Nintendo Switch. *Id*. ¶ 60. Once inserted, the Nintendo Switch's Technological Measures are overridden and circumvented, and the Nintendo Switch is booted (*i.e.*, started up), with the unauthorized operating system SX OS from an inserted memory card. *Id.*

*Second*, Defendants have offered to the public Team Xecuter's recently-announced Circumvention Devices, the SX Core and SX Lite. *Id.* ¶ 64. Images on Team Xecuter's website show that the device is a hardware chip—or "modchip"—which is installed inside the Nintendo Switch after breaking open the casing. *Id.* Defendants have taken preorders and processed payments for the SX Core and SX Lite. *Id.* ¶ 70. The SX Pro, SX Core, and SX Lite circumvent Nintendo's Technological Measures, because otherwise the unauthorized SX OS could not be run on the consoles. *Id.* ¶ 69.

        2.      <u>Defendants' Encouragement and Facilitation of Rampant Piracy</u>.

In addition to the circumvention of Technological Measures, the SX OS—installable with the Circumvention Devices trafficked by Defendants—also circumvents certain Game TPMs, allowing hackers to make, copy, play, and further distribute unauthorized copies of Nintendo and its licensees' copyrighted video games, all without detection by Nintendo. *Id.* ¶ 71. Using the SX OS, users can find an illegal game file online and transfer it to a Nintendo Switch. *Id.* ¶ 72. The SX OS allows these illegal game copies to run locally, even though Nintendo's official operating system would not allow a user to run such illegal and unauthorized copies. *Id.* Nintendo has not authorized users to download or play *any* games on the Nintendo Switch other than those purchased lawfully from Nintendo. *Id.* ¶ 74. The sale and distribution of such pirated games causes direct harm to, and financial loss for, Nintendo. *Id.* ¶ 75.

        3.      <u>Defendants' Infringement of Nintendo's Copyrighted Works by Direct Sale of Nintendo's Games</u>.

Five of Defendants' Websites—ANXCHIP.COM, FLASHCARDA.COM, MOD3DSCARDS.COM, NX-CARD.COM, and USACHIPSS.COM—have also sold memory cards preloaded with pirated, and thus infringing, copyrighted games for the Nintendo Switch. *Id.* ¶ 78. As set forth in Appendix A to the Complaint, Defendants have infringed at least 14 works in which Nintendo owns or exclusively controls the copyrights. *Id.* ¶ 83 & App'x A.

### C. Procedural History.

Nintendo filed its complaint against Defendants on May 15, 2020. Because Defendants took steps to conceal their actual identities and real-world locations, this Court authorized Nintendo to serve Defendants electronically. Order Granting Pl.'s Mot. for Leave to Serve Process by Alternative Means, Dkt. 20. Nintendo executed electronic service on July 16 and filed a declaration attesting to same. Decl. of Alison Stein, Dkt. 21. Defendants' deadline to respond to Nintendo's complaint was August 6. Fed. R. Civ. P. 12(a)(1)(A)(i). After Defendants failed to respond, Nintendo filed a motion seeking the entry of Defendants' default. Mot. for Default, Dkt. 22. The Clerk entered default on August 19. Clerk's Order of Default, Dkt. 24.

## III. Nintendo Has Established Defendants' Liability.

Nintendo asserted three Claims for Relief: trafficking in devices in violation of the Digital Millennium Copyright Act's anti-trafficking provisions against all Defendants (Claims for Relief 1 and 2); and violation of Nintendo's reproduction and distribution rights under the Copyright Act against Defendants doing business as ANXCHIP.COM, FLASHCARDA.COM, MOD3DSCARDS.COM, NX-CARD.COM, and USACHIPSS.COM (collectively "Claim 3 Defendants") (Claim for Relief 3). By their failure to respond, Defendants have admitted the factual allegations in Nintendo's complaint. *See Ferrari Fin. Servs.*, 2020 WL 3971342, at *1 ("Upon entry of default, this Court takes as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages.") (citing Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys.*, 826 F.2d at 917–18).

### A. Nintendo Has Established Defendants' Liability Under the DMCA.

Section 1201(a)(2) of the DMCA prohibits Defendants from trafficking in devices that are primarily designed to circumvent technological measures that effectively control access to copyrighted works. 17 U.S.C. § 1201(a)(2).

The statute provides, in pertinent part, that "[n]o person shall . . . offer to the public . . . any technology, product, service, device, component, or part thereof, that" is "primarily designed" for circumvention, "has only limited commercially significant purpose or use" apart from circumvention, or "is marketed by that person or another acting in concert with that person with that person's knowledge for use" in circumvention. *Id*. § 1201(a)(2)(A)–(C). Similarly, Section 1201(b)(1) of the DMCA prohibits Defendants from engaging in the same conduct with regard to devices that "circumvent protection afforded by a technological measure." *See id*. §§ 1201(b)(1) & (b)(2)(A). Those two anti-trafficking provisions form the bases for Claims for Relief 1 and 2 against Defendants.

As set forth above and in Nintendo's Complaint, Nintendo's Technological Measures effectively control access to works protected by the Copyright Act, including the copyrighted operating system of the Nintendo Switch as well as Nintendo's video games playable on the Nintendo Switch. Compl. ¶¶ 49–58, 98–99, 108–09. Those Technological Measures require, in the ordinary course of their operation, the application of information, or a process or a treatment, with Nintendo's authority, to gain access to the Nintendo Switch console and any copyrighted games playable on the console. *Id*. ¶ 58. Team Xecuter's SX Pro, SX Core, and SX Lite are classic anti-circumvention devices—they override Nintendo's Technological Measures to install the SX OS and enable the playing of pirated games on the Nintendo Switch. *Id*. ¶¶ 59–77, 100–01, 110–11. By "offer[ing]" these Circumvention Devices for sale "to the public," Defendants violated the DMCA. *Id*. ¶¶ 70–77, 85–95, 100–01, 110–11.

**B.     Nintendo Has Established That the Claim 3 Defendants Are Liable for Copyright Infringement.**

To establish copyright infringement, Nintendo must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Nintendo has alleged and demonstrated its ownership of valid and registered copyrights in the 14 Nintendo video games listed in Appendix A to Nintendo's Complaint. Compl. ¶ 83 & App'x A. Registration "is considered prima facie evidence of the validity of the copyright." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002); *see also* 17 U.S.C. § 410(c). As such, Nintendo has established the first element of its infringement claim.

Nintendo has also adequately alleged that each of the Claim 3 Defendants copied and distributed its registered works by selling memory cards preloaded with pirated, and thus infringing, copies of copyrighted games for the Nintendo Switch. Compl. ¶ 78. That allegation is deemed true for the purposes of establishing the Claim 3 Defendants' liability. *See Criminal Prods., Inc. v. Gunderman*, No. C16-1016-RAJ, 2017 WL 664047, at *2 (W.D. Wash. Feb. 17, 2017) (granting a default judgment against copyright defendants who did not contest the copying allegations in the complaint) (citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008)). As such, Nintendo has satisfied the second element and established the Claim 3 Defendants' liability for copyright infringement.

### IV.    This Court Should Enter Default Judgment Against Defendants.

"Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process." *Ferrari Fin. Servs.*, 2020 WL 3971342, at *1 (citing *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986)). *First*, a party must obtain a Clerk's entry of default, pursuant to Rule 55(a). *Id*. *Second*, the non-defaulting party must either request that the Clerk enter default judgment when the claim is for "a sum certain or a sum that can be made certain by computation," Fed. R. Civ. P. 55(b)(1), or, "[i]n all other cases, the party must apply to the court for a default judgment," *id*. 55(b)(2). Nintendo has obtained a Clerk's entry of default, *see* Clerk's Order of Default, Dkt. 24, and now applies to this Court for a default judgment against Defendants.

As an initial matter, this Court has personal jurisdiction over Defendants. Defendants transacted business in the State of Washington and in this District and have specifically marketed, offered to the public, and otherwise trafficked in Circumvention Devices in the United States and in this District. Compl. ¶¶ 25–29. Moreover, Nintendo is located in this District. *Id*. ¶ 28; *see Third Estate LLC v. Cultevation, Ltd*., No. CV1405125MWFJPRX, 2015 WL 12426153, at *5–6 (C.D. Cal. Oct. 23, 2015) (concluding that the court had personal jurisdiction over a defendant because it operated an interactive website that made sales in the forum state and because the defendant knew or should have known the plaintiff was based in the state, and granting a default judgment).

Courts in this Circuit consider multiple factors in determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72; *see also Ferrari Fin. Servs.*, 2020 WL 3971342, at *2–3 (applying the *Eitel* factors and granting a default judgment).

While the final *Eitel* factor always weighs against default judgment, *see Ferrari Fin. Servs.*, 2020 WL 3971342, at *3, all of the other factors weigh in favor of entering a default judgment against Defendants here. We walk through each in turn.

As to the first *Eitel* factor—prejudice to the plaintiff—Nintendo will be heavily prejudiced without entry of default judgment because it will have no remedy against Defendants. *See Criminal Prods.*, 2017 WL 664047, at *2 ("Without entry of default judgment, Plaintiff will be prejudiced because it will be left without a proper remedy.") (citing *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010)). The second and third *Eitel* factors—which address the strength of Nintendo's substantive claims and the sufficiency of its Complaint—also weigh heavily in favor of entering a default judgment. As discussed in Section

III, *supra*, Nintendo has proven each of the claims for relief alleged in the complaint. *See Criminal Prods.*, 2017 WL 664047, at *2. The fourth *Eitel* factor—the amount of money at issue—also weighs in favor of entering a default judgment because Nintendo is not seeking monetary relief. *See id*. at *2 (concluding that the fourth factor favored a default judgment because the amount at stake in the case was "relatively modest").

As for the fifth *Eitel* factor—the potential for material factual disputes—any concern about that possibility is outweighed by the fact that Defendants have failed to take advantage of the "opportunity to contest the allegations" by failing to answer or respond to the complaint. *Id*. at *3. With respect to the sixth *Eitel* factor—the potential that the default is the result of excusable neglect—Defendants were served with the summons and complaint, and took actions indicating that they were aware of the claims against them, such as beginning to operate under new websites (or "domain-hopping"), *see* Mot. for Leave to Serve Process by Alternate Means, Dkt. 15 at 2 n.2, and communicating with their customers about the lawsuit. Stein Decl. ¶ 4. In addition, the lawsuit was widely covered in the media. *Id*. ¶ 3. Despite the fact that Defendants were served with the Complaint and Summons pursuant to a court order, and despite the evidence that Defendants are aware of the lawsuit, they did not file an answer or otherwise make an appearance in the lawsuit. *See* Mot. for Leave to Serve Process by Alternate Means, Dkt. 15 at 14–15; *see also* Stein Decl. ¶ 7; *Criminal Prods.*, 2017 WL 664047, at *2 (concluding that the defendants "likely had ample notice of the action" when properly served); *Ferrari Fin. Servs*., 2020 WL 3971342, at *2 (the sixth factor weighed in favor of a default judgment because the plaintiff "demonstrated proper service . . . and there is no evidence that his failure to respond to the Complaint is the result of excusable neglect").

Finally, the seventh *Eitel* factor—the policy preference for resolution of cases on their merits—always weighs against default. *Ferrari Fin. Servs*., 2020 WL 3971342, at *3. However, despite the fact that a "decision on the merits is desirable," "Defendant[s] ha[ve] simply failed to file a responsive pleading, appear, or otherwise answer the complaint," so "[u]nder these

circumstances, there would be nothing left to litigate if the default has been entered, but no default judgment in favor of [Nintendo] was entered." *Id*.

The *Eitel* factors strongly favor a default judgment. This Court should grant it.

## IV. Nintendo Is Entitled to a Permanent Injunction.

In its Complaint, Nintendo seeks a permanent injunction against Defendants that: (1) restrains Defendants from further violations of the Copyright Act; (2) requires Defendants to surrender and cease operation of their domain names, and to transfer those domain names to Nintendo's control; (3) enjoins Defendants and all third parties acting in concert with Defendants from supporting or facilitating access to any or all domain names, URLs, or websites through which Defendants violate Nintendo's rights; (4) provides for the seizure, impoundment, and destruction of devices that circumvent technical protections for Nintendo's copyrights; and (5) requires Defendants, within thirty days after service of judgment, to file with the Court and serve on Nintendo a written report under oath setting forth in detail the manner in which they complied with the preceding provisions. Compl., Prayer for Relief ¶¶ 2–5.

Section 502(a) of the Copyright Act authorizes the Court to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Additionally, Sections 1203(b)(1) and (b)(2) of the DMCA authorize the Court to "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation," and to "order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation." 17 U.S.C. §§ 1203(b)(1)–(2). Moreover, a court may enter a default judgment for equitable relief. *Criminal Prods*., 2017 WL 664047, at *3. In short, the injunction sought by Nintendo is expressly permitted by multiple provisions of the law and is necessary to prevent Defendants from continuing to violate the law.

In order to obtain a permanent injunction, a party must show, in addition to success or likelihood of success on the merits: (1) irreparable harm; (2) lack of adequate remedies at law;

(3) that the balance of hardships weighs in its favor; and (4) that the injunction is in the public's interest. *Criminal Prods*., 2017 WL 664047, at *3 (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393–94 (2006)).

As an initial matter, as described above, *see supra* Section III, Nintendo has succeeded on the merits by virtue of Defendants' default. *Kleven v. Hereford*, No. CV1302783ABAGRX, 2016 WL 4424964, at *16 (C.D. Cal. Feb. 18, 2016) ("Plaintiffs have achieved 'actual success on the merits' because . . . Defendants have admitted liability through their default and the Court has determined that default judgment is warranted.").

In addition, Nintendo will suffer irreparable harm unless an injunction is issued. *See* Compl. ¶¶ 18–22, 105, 115, 124. In general, a copyright owner who demonstrates past infringement and a substantial likelihood of future infringement is entitled to a permanent injunction. *See Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 492 (6th Cir. 2007) ("It is uncontroversial that a showing of past infringement and a substantial likelihood of future infringement justifies issuance of a permanent injunction."); *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) (upholding permanent injunction where it was found to be "not unlikely" that defendant would infringe plaintiff's copyrights in future, despite defendant's representations that it had ceased infringement). As alleged in the well-pleaded Complaint, Defendants have trafficked in devices that circumvent Nintendo's Technological Measures and infringed Nintendo's copyrights. These allegations are now deemed admitted on Defendants' default. *Hereford*, 2016 WL 4424964, at *16. Moreover, Defendants have evaded service and otherwise refused to participate in this lawsuit, further underscoring that they are not to be trusted to comply with the law on their own.

*Second*, an award of monetary damages is insufficient to protect against Defendants' likely future infringement. *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) (finding money damages alone are not an adequate remedy in view of irreparable harm from continued infringement). Indeed, Nintendo does not seek an award of

monetary damages, and such an award likely would be ineffective here, as Defendants have refused to appear or participate in this lawsuit, despite the fact that they are indisputably aware of its existence. *See, e.g.*, *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012) (determining that "damages are an ineffective remedy" because defendant "will simply refuse to pay any judgment").

*Third*, the threatened injury to Nintendo outweighs whatever harm—if any—Defendants would experience from an injunction. Defendants have no legitimate purpose in trafficking in illegal circumvention devices. The requested injunction would simply require Defendants to comply with the law by preventing Defendants from trafficking in devices that circumvent Nintendo's Technological Measures and from infringing Nintendo's copyrights. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) ("[A]n infringer of copyright cannot complain about the loss of ability to offer its infringing product."); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220–22 (C.D. Cal. 2007) (balance of hardships weighed in plaintiff's favor where defendant had no "legitimate business purpose whatsoever" and could immediately return to its prior ways after the motion for a permanent injunction is denied").

*Finally*, the requested injunction would serve the public interest. "[T]he public receives a benefit when the legitimate rights of copyright holders are vindicated." *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011); *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) (affirming the district court's conclusion that an injunction in a case brought under the DMCA and Copyright Act was in the public interest). As such, the requested permanent injunction is warranted in this case, and Nintendo respectfully requests that it be entered against Defendants.

## V. Conclusion.

For the foregoing reasons, Nintendo respectfully requests that this Court enter a Default Judgment against Defendants on each of the claims set forth above. Nintendo also respectfully requests that this Court enter the requested permanent injunction against Defendants.

DATED this 4th day of September, 2020.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| **GORDON TILDEN THOMAS & CORDELL LLP** | **JENNER & BLOCK LLP** |
| Attorneys for Plaintiff Nintendo of America Inc. | Attorneys for Plaintiff Nintendo of America Inc. |
| s/ *Michael Rosenberger* | s/ *Alison I. Stein* |
| Michael Rosenberger, WSBA #17730 | Alison I. Stein (*Pro Hac Vice*) |
| Michael Brown, WSBA #45618 | Cayman C. Mitchell (*Pro Hac Vice*)* |
| 600 University Street, Suite 2915 | 919 Third Avenue, 38th Floor |
| Seattle, WA 98101 | New York, NY 10022 |
| Telephone: 206.467.6477 | Telephone: 212.891.1600 |
| mrosenberger@gordontilden.com | astein@jenner.com |
| mbrown@gordontilden.com | cmitchell@jenner.com |
| | Christopher S. Lindsay (*Pro Hac Vice*) |
| | 633 West 5th Street, Suite 3600 |
| | Los Angeles, CA 90071 |
| | Telephone: 213.239.5100 |
| | clindsay@jenner.com |

*Admitted only in Massachusetts, not admitted in New York. Practicing under the supervision of the partnership of Jenner & Block, LLP